FILED
06/13/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 5, 2022 Session

## ESTATE OF JENNIFER DIANE VICKERS v. DIVERSICARE LEASING CORPORATION ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 73909    Bonita Jo Atwood, Judge**

_____

**No. M2021-00894-COA-R3-CV**

_____

A nursing home resident commenced this health care liability action after she had 18 teeth extracted, after which she suffered excessive bleeding. Before suing, the plaintiff's daughter, acting as her mother's attorney in fact, provided each prospective defendant with a form that purported to authorize the release of the plaintiff's health information as required by Tennessee Code Annotated § 29-26-121(a)(1). Four months later, the plaintiff filed her complaint and a certificate of good faith as required by § 29-26-122(a). The defendants responded by moving to dismiss the complaint, arguing that the pre-suit authorizations were invalid because the daughter lacked the authority to make "health care decisions" for the plaintiff. The trial court denied the motions, finding the general power of attorney authorized the daughter to release the plaintiff's medical records. After the plaintiff filed an amended complaint to add a claim for lack of informed consent, the defendants moved to dismiss all claims set forth in the amended complaint based on the plaintiff's failure to file a new certificate of good faith. The plaintiff argued that a new certificate was unnecessary; nevertheless, she moved for an extension of time to comply. Following a hearing, the court found that a new certificate of good faith was required by § 29-26-122(a) because the amended complaint asserted a new claim. The court also denied the plaintiff's motion for an extension of time to comply on the ground that the plaintiff failed to establish "extraordinary cause" to justify an extension. Based on these findings, the court granted the defendants' motions to dismiss all claims. This appeal followed. We agree that a new certificate of good faith was required; however, we find that the trial court applied an incorrect legal standard to deny the motion for an extension of time in which to comply. This is because the standard applicable to a motion for an extension of time to comply is "good cause," not "extraordinary cause," and good cause is a less exacting standard than extraordinary cause. _See Stovall v. UHS Lakeside, LLC_, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *12 (Tenn. Ct. App. Apr. 22, 2014) (citations omitted), _overruled on other grounds by Davis ex rel. Davis v. Ibach_, 465 S.W.3d 570 (Tenn. 2015). Accordingly, this issue, along with the trial court's decision to dismiss the entire amended complaint, are vacated and remanded for further consideration by the trial

court. As a result, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Luvell L. Glanton, Nashville, Tennessee, for the appellant, Estate of Jennifer Diane Vickers.

Joshua C. Cumby and F. Laurens Brock, Nashville, Tennessee, and Donna L. Boyce, Memphis, Tennessee, for the appellee, Diversicare Leasing Corporation.

David E. Harvey, Nashville, Tennessee, for the appellee, OneCare Dental Solutions, LLC.

Kara G. Bidstrup, Karl M. Braun, and Rod C. Watson, Nashville, Tennessee, for the appellee, Paul H. Straughn.

### OPINION

#### FACTS AND PROCEDURAL BACKGROUND

In October 2016, Jennifer Diane Vickers ("Plaintiff") received emergency dental services from Dr. Paul Straughn at a nursing home operated by Diversicare Leasing Corp. d/b/a Diversicare of Smyrna. Unbeknownst to Dr. Straughn, Plaintiff was on blood thinners at the time of the procedure. After Dr. Straughn extracted 18 teeth, Plaintiff began to bleed heavily and was taken to a nearby emergency room. She was released the next day.

Eleven months later, Plaintiff sent pre-suit notice letters to Dr. Straughn, Diversicare, and the company that arranged for Dr. Straughn's visit, OneCare Dental Solutions, LLC (collectively, "Defendants"). Each letter included several forms that purported to authorize the release of Plaintiff's medical records to and from the other defendants. The forms were signed by Plaintiff's daughter, Constance Lynn Bennett, as Plaintiff's attorney in fact. Plaintiff also provided each defendant with a copy of Ms. Bennett's general power of attorney.

Four months later, Plaintiff commenced this action by filing a complaint in the Rutherford County Circuit Court.[1] The complaint asserted negligence claims against all

---

[1] Plaintiff died of causes unrelated to this action on September 19, 2018. Shortly thereafter, the Estate of Jennifer Diane Vickers was substituted as the plaintiff.

three defendants, and it asserted additional claims against Diversicare for breach of contract, breach of fiduciary duty, and violation of the Tennessee Adult Protection Act, Tennessee Code Annotated §§ 71-6-101 to -126. Along with the complaint, Plaintiff's attorney filed a certificate of good faith in which he stated that he consulted one or more experts who provided signed written statements confirming that there was "a good faith basis to maintain the action consistent with the requirements of Tennessee Code Annotated § 29-26-115."

Defendants then moved to dismiss the complaint based on Plaintiff's alleged failure to comply with Tennessee Code Annotated § 29-26-121(a)(1), which requires plaintiffs to provide potential defendants with medical record release forms that comply with the Health Insurance Portability and Accountability Act of 1998 ("HIPAA"). Defendants argued that the forms they received were invalid because they were signed by Plaintiff's daughter, Ms. Bennett, and Ms. Bennett's general power of attorney did not include the authority to make "health care decisions" for Plaintiff unless Plaintiff was incapacitated. The trial court denied the motions, finding that the power of attorney authorized Ms. Bennett to release Plaintiff's medical records.

After the parties conducted discovery, Defendants moved for summary judgment based on Plaintiff's lack of expert proof. In response, Plaintiff produced the affidavit of Dr. Dean DeLuke, DDS, who stated that he was familiar with the applicable standards of care and believed that Dr. Straughn and OneCare's conduct fell below those standards. Dr. DeLuke also believed that Dr. Straughn and OneCare's acts and omissions proximately caused Plaintiff's injuries. In particular, Dr. DeLuke's opinion was that Dr. Straughn deviated from the acceptable standards by failing to inform Plaintiff about the risk of extracting her teeth while she was on blood thinners.

Plaintiff then amended her complaint to add a claim for lack of informed consent and restate all negligence claims against each defendant as well as claims for breach of contract and breach of fiduciary duty against Diversicare.[2] Plaintiff did not, however, file a new certificate of good faith with the amended complaint. Instead, she incorporated by reference the certificate attached to the original complaint:

> 8. Pursuant to T.C.A. § 29-26-122, Plaintiff's counsel has previously attached a Certificate of Good Faith to the Complaint. (*See* attached Exhibit "2").[3]

---

[2] However, Plaintiff did not reassert her claim for violation of the Tennessee Adult Protection Act.

[3] Plaintiff did not attach "Exhibit 2" to the amended complaint.

Defendants then moved to dismiss the amended complaint, asserting that § 29-26-122(a) required Plaintiff to file a new certificate. In response, Plaintiff maintained that a new certificate was unnecessary because she had provided Defendants with an assurance that there was a good faith basis for maintaining the action by filing the original certificate of good faith. Plaintiff also argued that she had substantially complied with § 29-26-122(a) because Dr. DeLuke's affidavit provided Defendants with notice that there was a good faith basis for her new informed consent claim. In the alternative, Plaintiff moved for an extension of time to file a new certificate under Tennessee Code Annotated § 29-26-122(c). Plaintiff also argued that there was "good cause" for granting the extension because it was unclear whether § 29-26-122(a) applied to amended complaints, and Defendants knew that there was a good faith basis for every claim asserted in the amended complaint.

At the hearing on Defendants' motions to dismiss, the trial court held that § 29-26-122(a) required Plaintiff to file a new certificate of good faith because her amended complaint added a new "cause of action." The court also held that Plaintiff could not rely on Dr. DeLuke's affidavit because § 29-16-122(a) requires strict compliance. The court then denied Plaintiff's motion for an extension of time, reasoning that Plaintiff failed to show "extraordinary cause" for her failure to comply.

The trial court also asked the parties whether the court had to dismiss the entire complaint or just the new claim for lack of informed consent. Plaintiff contended that dismissal of only the new claim was necessary because the original certificate of good faith supported the other claims. But Defendants argued that dismissal of the entire amended complaint was necessary because the amended complaint superseded and destroyed the original. The trial court agreed with Defendants and announced that it was dismissing the entire amended complaint.

Plaintiff then filed a motion to alter or amend the judgment under Tennessee Rule of Civil Procedure 59.04, which the trial court denied. This appeal followed.

**ISSUES**

Plaintiff raises five issues on appeal:

1. Was the trial court correct in ruling that every amended complaint in a health care liability action needs to be accompanied by a new certificate of good faith even when all of the claims in the original complaint have been brought forward into the amended complaint except a claim of lack of informed consent which was added to the amended complaint?

2. Does a filing of an amended complaint destroy the original complaint even when the amended complaint makes a specific reference and incorporates by reference the certificate of good faith in the original complaint?

- 4 -

3. Did the trial court err by dismissing the entire amended complaint rather than just the lack of informed consent claim where there was already a good faith certificate on file supporting the allegations raised in the amended complaint?

4. Did the trial court err by ruling that a qualified expert's affidavit, filed in the record indicating that the defendant dentist failed to meet the standard of care, cannot constitute substantial compliance with respect to the good faith certificate requirement as provided in *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215 (Tenn. Ct. App. Aug. 31, 2012)?

5. Did the trial court err by ruling that a reliance on a reasonable interpretation (but incorrect) of the law could not permit a showing of good cause sufficient to allow an extension of time to file a good faith certificate which basis for good cause had been permitted in *Stovall v. UHS Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345 (Tenn. Ct. App. Apr. 22, 2014)?

Defendants raise one other issue on appeal:

Whether the trial court erred in denying Defendants' original motions to dismiss based upon Plaintiff's failure to provide HIPAA compliant medical authorizations and failure to comply with the pre-suit notice requirements.

### STANDARD OF REVIEW

The Tennessee Health Care Liability Act ("THCLA"), Tennessee Code Annotated §§ 29-26-101 to -122, "imposes certain procedural requirements on a party advancing a health care liability claim in Tennessee." *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016) (footnote omitted). "A motion to dismiss under Rule 12.02(6) is the appropriate way to challenge compliance with the Act's procedural requirements." *Cooper v. Mandy*, 639 S.W.3d 29, 33 (Tenn. 2022). We review the trial court's decision on a motion to dismiss de novo with no presumption of correctness. *See id.*

A trial court's decision to enlarge the time for filing a certificate of good faith under § 29-26-122(c) is discretionary, *Brandon v. Williamson Med. Ctr.*, 343 S.W.3d 784, 789 (Tenn. Ct. App. 2010) (citations omitted), and we review discretionary decisions under the "abuse of discretion" standard, *see Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that of the trial court. *Id.* Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from meaningful appellate scrutiny:

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.*

When "[a]pplying this framework, we look first at whether the factual basis for the trial court's decision is supported by evidence in the record." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020). We then examine whether the trial court identified and applied the correct legal principles relevant to its decision. *See id.* Finally, we look at "whether the [trial] court's decision was in the range of acceptable alternative dispositions." *Id.*

Thus, we will review the trial court's decision to deny Plaintiff's motion for an extension of time to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court correctly identified and applied the correct legal principles, and whether the decision is within the range of acceptable alternative dispositions. *See Lee Med., Inc.*, 312 S.W.3d at 524.

**ANALYSIS**

## I. HIPAA COMPLIANT MEDICAL RELEASES

Defendants contend that the trial court erred in denying their original motions to dismiss based on Plaintiff's alleged failure to provide HIPAA compliant medical authorizations as required by Tennessee Code Annotated § 29-26-121(a)(1).

Section 29-26-121(a)(1) requires persons asserting a potential claim for health care liability to provide each defendant health care provider with pre-suit notice. Each notice must include, *inter alia*, "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." *Id.* § 29-26-121(a)(2). To comply with HIPAA, authorization forms must contain six core elements, including the "[s]ignature of the individual and date," and "[i]f the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual." 45 C.F.R. § 164.508(c)(1)(vi).

The authorization forms that Plaintiff sent to Defendants were signed and dated by Ms. Bennett as "Power of Attorney for Jennifer Diane Vickers." Nonetheless, Defendants maintain that the authorization forms were invalid because Ms. Bennett's authority to make

"health care decisions" depended on Plaintiff's decisional capacity. Defendants rely on paragraph 3 of Ms. Bennett's general power of attorney, which provides:

> **3. Designation of Health Care Surrogate**. Without limiting this general power of attorney, I designate Constance Lynn Bennett as my health care surrogate to make any health care decisions for me when I no longer have decisional capacity. . . . I grant my health care surrogates the right to access all my health and medical records and to also access any billing related to my health records. With this appointment I waive my right to privacy and confidentiality pursuant to HIPAA.

It is undisputed that Plaintiff still had decisional capacity when Ms. Bennett signed the authorization forms. Thus, Ms. Bennett did not have the power to make "health care decisions" for Plaintiff. Nonetheless, we find Ms. Bennett did not need the power to make "health care decisions" to authorize the release of Plaintiff's medical records to commence a health care liability action.

Like other written instruments, powers of attorney "should be interpreted according to their plain terms." *Tennessee Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 750 (Tenn. 2007). And absent proof to the contrary, "[p]owers of attorney are to be construed . . . *in accordance with the prevailing laws relating to the act authorized.*" *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 884 (Tenn. 2007) (quoting 3 Am. Jur. 2d Agency § 27). Two statutes relate to Ms. Bennett's authority to release medical records: the Uniform Durable Power of Attorney Act, Tennessee Code Annotated §§ 34-6-101 to -112, and the Tennessee Durable Power of Attorney for Health Care Act, Tennessee Code Annotated §§ 34-6-201 to -218. These acts clearly distinguish between the authority to make health care decisions and the authority to release medical records.

The Tennessee Durable Power of Attorney for Health Care Act defines "[h]ealth care decision" as "consent, refusal of consent or withdrawal of consent to health care." Tenn. Code Ann. § 34-6-201(3). The Act defines "[h]ealth care" as "any care, treatment, service or procedure to maintain, diagnose or treat an individual's physical or mental condition, and includes medical care as defined in § 32-11-103."[4] *Id.* § 34-6-201(2). The Act states that attorneys in fact who are authorized to make health care decisions have the right to receive, review, and disclose medical records:

> Except to the extent the right is limited by the durable power of attorney for health care, an attorney in fact designated to make health care decisions under the durable power of attorney has the same right as the principal to receive

---

[4] Tennessee Code Annotated § 32-11-103(5) defines "medical care" as including "any procedure or treatment rendered by a physician or health care provider designed to diagnose, assess or treat a disease, illness or injury."

information regarding the proposed health care, to receive and review medical records, and to consent to the disclosure of medical records.

*Id.* § 34-6-206.

Similarly, the Uniform Durable Power of Attorney Act identifies various powers that may be incorporated into a durable power of attorney, including the authority to "execute any releases or other documents that may be required in order to obtain [medical and hospital records], and disclose that information to persons, organizations, firms or corporations the principal's attorney in fact deems appropriate." Tenn. Code Ann. § 34-6-109(21). But the Act also states that this power "shall not be construed to vest an attorney in fact with, or authorize an attorney in fact to . . . [m]ake any decisions regarding medical treatments or health care." *Id.* § 34-6-108(c), (c)(9). Accordingly, both the Tennessee Durable Power of Attorney for Health Care Act and the Uniform Durable Power of Attorney Act establish that disclosing someone's health information is different from making health care decisions on their behalf.

Here, Ms. Bennett's authority to release Plaintiff's medical records derived from the authority granted to her under the general power of attorney to take all necessary actions to commence and prosecute legal actions on Plaintiff's behalf. The power of attorney provided in relevant part:

> I, Jennifer Diane Vickers, . . . grant a general power of attorney, to Constance Lynn Bennett . . . and appoint said individual[] as my attorney-in-fact to act in my name, place and stead in any way which I myself could do if I were personally present, including but not limited to the following:
>
> .    .    .
>
> e. To commence, prosecute, compromise, settle, adjust and/or discontinue any claims, suits, actions or legal proceedings for the recovery of sums of money or property now or hereafter due or to become due, or held by or belonging to me.
>
> .    .    .
>
> m. To do and perform every act and thing necessary or proper in the exercise of any of the rights and powers herein granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my attorney-in-fact, or his/her substitute or substitutes, shall lawfully do or cause to be done by virtue of the authority granted herein.

Significantly, a plaintiff cannot prosecute a health care liability action without authorizing the defendants to obtain and review the plaintiff's relevant medical records.

- 8 -

*See Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013). Thus, if we were to construe Ms. Bennett's power of attorney to exclude the power to authorize the release of medical records in a pre-suit notice under Tennessee Code Annotated § 29-26-121(a)(1), we would effectively be rewriting the power of attorney from authorizing Ms. Bennett to prosecute "any" legal actions on Plaintiff's behalf to authorizing Ms. Bennet to prosecute "most" legal actions. *See Tennessee Farmers*, 239 S.W.3d at 750–51 (finding attorney in fact had authority to change beneficiary designation on life insurance policy when the power of attorney authorized her "to transact *all* insurance business" and "*take any other action necessary or proper in this regard*").

Because Ms. Bennett was acting within the scope of her authority under the general power of attorney when she executed the HIPAA authorization forms, we conclude that Plaintiff provided Defendants with valid authorizations to access and use her medical records. As a consequence, Plaintiff complied with Tennessee Code Annotated § 29-26-121(a). Therefore, we affirm the trial court's decision to deny Defendants' motions to dismiss on this ground.

## II. CERTIFICATE OF GOOD FAITH CONCERNING NEW CLAIMS

Plaintiff contends the trial court erred when it ruled that a certificate of good faith must be attached to every amended complaint in which a new claim is added. She argues that Tennessee Code Annotated § 29-26-122(a) requires a certificate of good faith with amended complaints only when a defendant has not already received a certificate in the same action. Defendants contend that a certificate of good faith must be filed with any amended complaint that asserts new allegations.

Section 29-26-122(a) requires plaintiffs to file a certificate of good faith "with the complaint" in "any health care liability action in which expert testimony is required by § 29-26-115." The THCLA defines "health care liability action" as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). Expert testimony is necessary in a health care liability action if the alleged misconduct "involved the exercise of medical judgment or skill." *Jackson v. Burrell*, 602 S.W.3d 340, 350 (Tenn. 2020). Thus, in any civil action alleging that a health care provider's acts or omissions involving the exercise of medical judgment or skill caused an injury, a certificate of good faith must be filed with "the complaint." The statute is silent, however, on whether this requirement applies to *amended* complaints.

The plain and ordinary legal definition of "complaint" is "[t]he initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief." *West v. AMISUB (SFH), Inc.*, No. W2012-00069-COA-R3-CV, 2013 WL 1183074, at *5 (Tenn. Ct. App. Mar. 21, 2013) (quoting *Black's Law Dictionary* (9th ed. 2009)). Hence, it is well established that a plaintiff must

file a certificate of good when commencing a new health care liability action. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309–10 (Tenn. 2012) (holding that plaintiff had to file a certificate with complaint filed under savings statute because it "commenced" a new action).

That said, Tennessee caselaw establishes that the certificate of good faith requirement is not strictly limited to the pleading that commences a legal action, at least where the initial pleading did not assert health care liability claims. *See, e.g.*, *Lacy v. HCA Health Serv. of TN, Inc.*, No. M2016-01027-COA-R3-CV, 2017 WL 1944351, at *2 (Tenn. Ct. App. May 10, 2017) (holding that plaintiff had to file a certificate of good faith with amended complaint that alleged health care liability claims for the first time). Our caselaw also establishes that the certificate of good faith requirement applies to amended pleadings that add new defendants to existing health care liability claims. *See, e.g.*, *Sirbaugh v. Vanderbilt Univ.*, 469 S.W.3d 46 (Tenn. Ct. App. 2014) (holding that plaintiff "could not rely on the certificate of good faith filed with the initial complaint because that certificate was predicated on an expert's belief that there was a good faith basis to maintain the cause of action against the Original Defendants and not the New Defendants" (citation omitted)). Neither party, however, has provided us with any authority that addresses whether a certificate is required with amended pleadings that assert new health care liability claims against existing defendants in an existing health care liability action, and we have found none. As a result, resolving this issue requires us to interpret the meaning of Tennessee Code Annotated § 29-26-122.

Several well-established canons of construction guide our interpretation of § 29-26-122. Because §§ 29-26-121 and -122 were enacted and amended simultaneously, "the rule of in pari materia 'is of peculiar force'" in their interpretation. *Myers*, 382 S.W.3d at 311 (quoting *Hill v. Roberts*, 217 S.W. 826, 828 (Tenn. 1920)). "[S]tatutes 'in pari materia' . . . are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994)).

Further, because § 29-26-122 creates a procedural requirement, *see Ellithorpe v. Weismark*, 479 S.W.3d 818, 825 (Tenn. 2015), its language should "be liberally construed in order to give effect to the legislative intent," *Stiner v. Powells Val. Hardware Co.*, 75 S.W.2d 406, 407 (Tenn. 1934). Liberal construction "allows courts to more broadly and expansively interpret the concepts and provisions within [a statute's] text," *Northland Ins. Co. v. State*, 33 S.W.3d 727, 730 (Tenn. 2000), but it "does not authorize the amendment, alteration or extension of [a statute's] provisions beyond [its] obvious meaning," *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000) (quoting *Pollard v. Knox Cnty.*, 886 S.W.2d 759, 760 (Tenn. 1994)).

Tennessee Code Annotated § 29-26-122 provides in relevant part:

(a) In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. . . . The certificate of good faith shall state that:

(1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

(A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

(B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115; or

.    .    .    .

(2) (B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue and, as appropriate, information from the plaintiff or others with knowledge of the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of § 29-26-115.

Tenn. Code Ann. § 29-26-122(a).

Plaintiff argues that a certificate of good faith is not required with amended complaints that add claims against existing defendants because § 29-26-122(a) only requires "**a** good faith basis to maintain **the action**," not a good faith basis to maintain **every claim.** Thus, under Plaintiff's interpretation, once a plaintiff has assured the defendant that the lawsuit has a good faith basis, the statute is satisfied whether or not the plaintiff amends or adds claims.

On the other hand, Defendants point out that § 29-26-122(a) requires the certificate of good faith to be based on an expert's belief that "there is a good faith basis to maintain the action **consistent with the requirements in § 29-26-115**." Section 29-26-115(a)

- 11 -

provides the essential elements that a plaintiff must prove to maintain a health care liability claim:

> (a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> > (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> >
> > (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> >
> > (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). Thus, Defendants argue that a certificate of good faith implies that an expert reviewed the complaint's specific allegations and believes those allegations satisfy each element in § 29-26-115 for each claim being asserted. Ergo, under Defendants' interpretation, a new certificate is necessary if the allegations change.

After considering the plain language of § 29-26-122, we find that each party has offered a reasonable interpretation of the statute. Section 29-26-122(a) requires a good faith basis for "the action," not "the claims." Section 29-26-121 uses the word "action" to refer to the lawsuit and "claim" to refer to the allegations. *See id.* § 29-26-121(c) ("In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any **action** asserting a **claim** for health care liability . . . ."); *see also* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 862 (3d ed. 2011) ("[T]he terms *action* and *suit* are interchangeable."). If the legislature intended for an expert's statement to be based on a belief that there were good faith grounds for **each claim**, the legislature could have said so. *Kampmeyer v. State*, 639 S.W.3d 21, 26 (Tenn. 2022) ("A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says.").

Nevertheless, by requiring "a good faith basis to maintain the action **consistent with the requirements of § 29-26-115**," the language of § 29-26-122(a) implies that "the plaintiff has consulted with at least one qualified expert who reviewed **the claims** and believes the defendant deviated from the applicable standard of care and that the deviation proximately caused the plaintiff's injury." *Est. of Blankenship v. Bradley Healthcare & Rehab. Ctr.*, No. E2021-00714-COA-R10-CV, 2022 WL 951256, at *5 (Tenn. Ct. App. Mar. 30, 2022) (emphasis added); *see Gilbert v. State*, No. E2021-00881-COA-R9-CV, 2022 WL 1117453, at *6 (Tenn. Ct. App. Apr. 14, 2022) ("Because section 29-26-122

requires certification of a basis for the defendant-specific elements established in section 29-26-115 . . . section 29-26-122 incorporates and requires section 29-26-115's specificity as to each defendant."); *Ledford ex rel. Rodriguez v. State*, No. E2019-00480-COA-R3-CV, 2020 WL 1686377, at *4 (Tenn. Ct. App. Apr. 7, 2020) ("The certificate of good faith must certify that an expert has reviewed the alleged facts and claims specific to a particular defendant and that the expert believes there is a good faith basis for maintaining a claim against that defendant." (citation omitted).

Construing the language of § 29-26-122 liberally to give effect to the legislative intent, *Stiner*, 75 S.W.2d at 407, we agree with Defendants' interpretation of the statute. The legislature enacted § 29-26-122 with the "objective of reducing and stabilizing health costs and protecting the general public." *Jackson v. HCA Health Servs. of Tennessee, Inc.*, 383 S.W.3d 497, 505 (Tenn. Ct. App. 2012). The legislature believed "that as liability costs increase, so does the cost of health care and the practice of 'defensive medicine,' spawned by the fear of costly legal actions, may lead to a lower quality of health care in general." *Id.* "The certificate of good faith filing requirement was included in the Act to ensure that only meritorious medical malpractice claims are filed." *Crawford v. Kavanaugh*, No. E2011-00696-COA-R3-CV, 2011 WL 5829602, at *5 (Tenn. Ct. App. Nov. 21, 2011) (citing *Howell v. Claiborne & Hughes Health Ctr.*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *16 (Tenn. Ct. App. June 24, 2010)). The certificate of good faith requirement accomplishes this goal by "eliminat[ing] lawsuits where the claims have not been vetted by an expert." *Hinkle*, 2012 WL 3799215, at *15. The purpose of a certificate of good faith is still implicated when a party amends a complaint to add new claims against existing defendants.

In summary, when Plaintiff filed her initial complaint, her attorney certified that he consulted at least one expert and obtained a signed, written statement confirming a good faith basis for maintaining the action consistent with the requirements in § 29-26-115. In doing so, Plaintiff's attorney was certifying that at least one expert reviewed the specific allegations in each claim and believed those allegations were sufficient to meet the requirements. *See Est. of Blankenship*, 2022 WL 951256, at *5. Accordingly, when Plaintiff learned new information during discovery that revealed additional grounds for liability, Plaintiff was required to consult with an expert to determine whether there was a good faith basis to assert claims based on those new allegations and to file a certificate stating as such with her amended complaint. Because the original certificate was based on an expert's belief that there was a good faith basis to maintain the action based on the claims in the original complaint, Plaintiff could not rely on the original certificate to support her amended complaint.

Thus, although Plaintiff and Defendants have offered reasonable interpretations concerning the unsettled requirements of § 29-26-122 when an amended complaint is filed that does not add new defendants, we agree with the trial court's determination that § 29-26-122 required Plaintiff to file a new certificate of good faith with her amended complaint.

## III. SUBSTANTIAL COMPLIANCE

Plaintiff contends the trial court erred when it found that she did not substantially comply with § 29-26-122(a). Plaintiff maintains that she substantially complied with § 29-26-122(a) by filing Dr. DeLuke's affidavit in response to Defendants' motions for summary judgment, which addressed all the elements in § 29-26-115, including the applicable standard of care, how Dr. Straughn deviated from that standard, and how Dr. Straughn's deviation directly and proximately caused Plaintiff's injuries.

In support of this argument, Plaintiff cites *Hinkle v. Kindred Hospital*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215 (Tenn. Ct. App. Aug. 31, 2012). In *Hinkle*, the plaintiff attached a doctor's affidavit to her complaint instead of a certificate of good faith. *Id.* at *8. Like Dr. DeLuke's affidavit, the doctor's affidavit in *Hinkle* addressed the applicable standard of care, how the defendants' conduct breached that standard, and how the defendants' breach caused the patient's injuries. *Id.* We found the affidavit was sufficient for § 29-26-122(a) because it supplied more information than was required. *Id.* at *9. We, however, find *Hinkle* distinguishable from the case at hand.

Unlike the plaintiff in *Hinkle*, who filed the doctor's affidavit with her complaint, Plaintiff filed Dr. DeLuke's affidavit with her response to Defendants' motions for summary judgment several months before amending her complaint. As our Supreme Court emphasized in *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300 (Tenn. 2012), plaintiffs must strictly comply with § 29-26-122's filing requirement by including the certificate of good faith "*with the complaint.*" *Id.* at 310; *see also Dotson v. State*, No. E2019-00325-COA-R9-CV, 2019 WL 6523164, at *4 (Tenn. Ct. App. Dec. 3, 2019) ("[T]he natural and ordinary meaning of the statute's words clearly and unambiguously requires that the certificate of good faith be a document that is filed in addition to and contiguous to the complaint."). Thus, whether or not the contents of Dr. DeLuke's affidavit addressed all the elements in § 29-26-115, Plaintiff did not strictly comply with § 29-26-122(a).

For this reason, we agree with the trial court's determination that Plaintiff could not rely on Dr. DeLuke's affidavit to satisfy the requirements of § 29-26-122(a).

## IV. GOOD CAUSE FOR EXTENSION OF TIME

Plaintiff contends the trial court erred when it denied her motion for an extension of time in which to file a new certificate of good faith after determining that "[s]imply believing that you have complied with the statute is not extraordinary cause."

A trial court's decision to enlarge the time to file a certificate of good faith is discretionary. *See Brandon*, 343 S.W.3d at 789 (citations omitted). In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court provided a framework for determining whether a trial court correctly exercised its discretion:

- 14 -

[R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Id.* at 524. In other words, discretionary decisions require "a conscientious judgment, consistent with the facts, **that takes into account the applicable law**." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015) (citing *Lee Med., Inc.*, 312 S.W.3d at 524) (emphasis added).

Nothing in the record suggests that the trial court discredited the explanation of Plaintiff's counsel that the failure to file a certificate of good faith with the amended complaint was based on an honest belief that the statute did not require a new certificate of good faith. Instead, the trial court denied Plaintiff's motion, explaining that "[s]imply believing that you have complied with the statute is not extraordinary cause." We respectfully find that the trial court applied an incorrect legal principle in denying Plaintiff's motion for an extension of time in which to file the requisite certificate of good faith.

Tennessee Code Annotated § 29-26-122 provides two forms of relief for non-compliant plaintiffs. First, a court may excuse the plaintiff's failure to file a certificate of good faith for "demonstrated extraordinary cause." *Id.* § 29-26-122(a). Second, a court may "grant an extension within which to file a certificate of good faith . . . **for other good cause shown**." *Id.* § 29-26-122(c) (emphasis added); *see Hurley v. Pickens*, 536 S.W.3d 419, 423 (Tenn. Ct. App. 2016). When the General Assembly adopted § 29-26-122(c), it "created a get-out-of-jail-free card to allow plaintiffs, in limited circumstances, to escape the mandatory deadlines for the certificate of good faith filing requirement." *Est. of Blankenship*, 2022 WL 951256, at *8. "In short, the statute allows for the late filing of a certificate; dismissal of the action with prejudice based on the fact that the certificate was not filed with the complaint is not automatic." *Hurley*, 536 S.W.3d at 423 (quoting *Robles v. Vanderbilt Univ. Med. Ctr.*, No. M2010-01771-COA-R3-CV, 2011 WL 1532069, at *2–3 (Tenn. Ct. App. Apr. 19, 2011)).

"Extraordinary cause" has been defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Myers*, 382 S.W.3d at 310–11 (quoting *Webster's New World Dictionary of the American Language*, 516 (1966)). Examples include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary." *Id.* (quoting John A. Day, *Med Mal Makeover 2009 Act Improves on '08: The New New Medical Malpractice Notice and Certificate of Good Faith Statutes*, Tenn. B.J., July 2009, at 14, 17).

On the other hand, "good cause" has been defined as "a cause that comports with the purposes of the . . . statute," *Wallace v. Sullivan*, 561 S.W.2d 452, 455 (Tenn. 1978), or "[a] legally sufficient reason," *Est. of Blankenship*, 2022 WL 951256, at *8 (alteration in original) (quoting Black's Law Dictionary (11th ed. 2019)). The phrase "has more often been defined by what it is not, rather than what it is." *Stovall*, 2014 WL 2155345, at *12. Suffice it to say that "good cause" is "a relative and highly abstract term." *Williams v. State*, No. 01-A-01-9206-BC00212, 1993 WL 41162, at *5 (Tenn. Ct. App. Feb. 19, 1993) (Koch, J., concurring) (citing *Wray v. Folsom*, 166 F. Supp. 390, 394 (W.D. Ark. 1958); *Wallace*, 561 S.W.2d at 455). It is clear, however, that "good cause is a less exacting standard than extraordinary cause." *Stovall*, 2014 WL 2155345, at *12 (citations omitted).

We have held that a party's misunderstanding of the law may constitute "good cause" or even "extraordinary cause" when the law is unsettled, unclear, or potentially confusing. *See Brown v. Samples*, No. E2013-00799-COA-R9-CV, 2014 WL 1713773, at *9 (Tenn. Ct. App. Apr. 29, 2014) (finding plaintiff met the more exacting standard of "extraordinary cause" when "the state of the . . . was unsettled, unclear, and potentially confusing" and "there was no statutory or regulatory guidance on th[e] issue at the time"); *Stovall*, 2014 WL 2155345, at *17–18 (holding that the plaintiff showed good cause for an extension of time based on her counsel's "reasonable confusion" over a requirement in § 29-26-122 that was "far from settled"); *see also Igou v. Vanderbilt Univ.*, No. M2013-02837-COA-R3-CV, 2015 WL 1517794, at *9 (Tenn. Ct. App. Mar. 27, 2015) ("[A]n issue of first impression may constitute extraordinary cause in some circumstances . . . ." (citation omitted)).

On the other hand, we have held that a professed misunderstanding of the law does not constitute "good cause" or "extraordinary cause" when the statute's language is clear. *See West*, 2013 WL 1183074, at *6 (finding purported "misinterpretation of the law" did not show good cause for an extension of time to file a certificate of good faith when the plain language of the statute was clear); *Hanson v. Levan*, No. E2020-01581-COA-R9-CV, 2021 WL 4944710, at *8 (Tenn. Ct. App. Oct. 25, 2021) (finding no "good cause" for an extension of time based on a "reasonable confusion in the law" when "the statute and resulting case law [were] clear"), *appeal denied* (Jan. 13, 2022).

Thus, whether the belief of Plaintiff's counsel that no certificate of good faith was required with the amended complaint was "good cause" for granting an extension depends on whether her counsel's misinterpretation was reasonable, i.e., whether the law was unsettled, unclear, or potentially confusing. *Cf. Lorenzen v. Emps. Ret. Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 232 (7th Cir. 1990) (explaining that "plausible misconstructions, but not mere ignorance, of the law or rules" may constitute excusable neglect).

Because the trial court applied the incorrect, "extraordinary cause" standard to Plaintiff's motion for an extension of time, we vacate its decision to deny Plaintiff's motion

for an extension of time in which to file the requisite certificate of good faith and remand for reconsideration of the motion under the correct "good cause" standard.

## V. DISMISSAL OF THE AMENDED COMPLAINT

Plaintiff also contends the trial court erred when it dismissed the entire amended complaint rather than just dismissing the lack of informed consent claim because a good faith certificate was filed with the original complaint. The trial court's decision to dismiss the entire amended complaint was based, in part, on its decision to deny Plaintiff's motion for additional time in which to file the requisite certificate. Therefore, we find it necessary to vacate the trial court's order dismissing the amended complaint. Accordingly, this issue is also remanded for further consideration by the trial court.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and vacated in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed one-half against the appellant, the Estate of Jennifer Diane Vickers, and one-half against the appellees, Diversicare Leasing Corp. d/b/a Diversicare of Smyrna; OneCare Dental Solutions, LLC; and Dr. Paul Straughn.

_____
FRANK G. CLEMENT JR., P.J., M.S.